IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PATRICIA ATKINS, )
*on behalf of* )
KIMBERLY MICHELLE ATKINS )
*(Deceased),* )
　 )
　　　　　Plaintiff, )
　 )
　　　v. ) Civil Action No. 17-1086
　 )
NANCY A. BERRYHILL, ACTING )
COMMISSIONER OF SOCIAL SECURITY, )
　 )
　　　　　Defendant. )

O R D E R

AND NOW, this 15th day of March, 2019, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision, denying Plaintiff's claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401 et seq., and denying Plaintiff's claim for supplemental security income under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court

may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] The Court notes at the outset that, sadly, Plaintiff Kimberly Michelle Atkins died on May 4, 2016, while the appeal of the decision of the Administrative Law Judge ("ALJ") was pending before the Appeals Council. Plaintiff's counsel has explained to the Court in his brief that, after having learned of Plaintiff's death, he obtained a copy of Plaintiff's death certificate, which revealed the next of kin to be Plaintiff's mother, Patricia Atkins. As Plaintiff's mother was designated a substitute party in the case, and because Plaintiff's estate is continuing to litigate the appeal, Plaintiff and her estate are both referred to herein as "Plaintiff."

Plaintiff presents a number of arguments to the Court on appeal, although some of those claims lack specific factual support. First, Plaintiff contends that this case should be remanded so that her death certificate can be considered by the ALJ in reevaluating her claim. Additionally, Plaintiff argues that the ALJ erred by: failing to give adequate weight to the medical opinion evidence provided by Plaintiff's treating physicians; failing to use a medical advisor to establish the onset date of Plaintiff's disabling impairments; and failing to consider whether Plaintiff satisfied "the Grids" at the light exertional level as of her 55th birthday. The Court disagrees with Plaintiff's arguments and finds that substantial evidence supports the ALJ's findings as well as her ultimate determination, based on all the evidence presented, of Plaintiff's non-disability.

With regard to the first argument, Plaintiff's death certificate lists her cause of death as "status asmaticus." At the time of her decision, although the ALJ found that Plaintiff's asthma constituted a severe impairment, she did not find Plaintiff's asthma to be a disabling impairment. Plaintiff argues, however, that since she had a severe impairment that appears to have later resulted in death, she should have been found to have been disabled during the relevant period by the ALJ at the time she issued her decision.

One of the forms of relief available to Plaintiff is for this Court to remand the matter back to the Commissioner for the consideration of certain new evidence, namely, Plaintiff's death certificate. It is well-established that evidence that was not before the ALJ cannot be considered by a district court in its determination of whether or not the ALJ's decision was supported by substantial evidence. See Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001); Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 360 (3d Cir. 2011). A district court can, however, remand a case on the basis of new evidence under sentence six of 42 U.S.C. § 405(g). Section 405(g) provides, in relevant part:

> [The court] may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there

is good cause for failure to incorporate such evidence into the
record in a prior proceeding.

Thus, to remand a case based on new evidence that has not been presented to the ALJ, the Court must determine that certain criteria have been met. First, the evidence must be new and not merely cumulative of what is in the record. Second, the evidence must be material, meaning that it must be relevant and probative, and that there must be a reasonable possibility that the new evidence would have changed the outcome of the determination. Third, the plaintiff must demonstrate good cause for not having previously incorporated the new evidence into the administrative record. See Matthews, 239 F.3d at 594; Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984). Under the facts of this case, the Court finds that this burden has not been met.

Specifically, although the death certificate at issue here is certainly new and is not merely cumulative of what is already in the record—and although Plaintiff obviously has good cause for not having previously incorporated such evidence into the record since it did not yet exist at the time of the ALJ's decision—it simply does not meet the materiality requirement. The document is from after the date the ALJ issued her decision and, as it does not describe Plaintiff's impairments prior to the time of her death, does not relate to the relevant time period. See Szubak, 745 F.2d at 833 ("An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of [a] previously non-disabling condition."). The Court appreciates the tragic fact that Plaintiff's death, which occurred after the ALJ issued her decision, appears to have been related to an asthmatic episode of some sort. That fact alone, however, does not show that Plaintiff was disabled and thus entitled to benefits during the earlier relevant time period under consideration by the ALJ. Moreover, as the document refers to Plaintiff's condition at the time of her death, it does not purport to describe her condition months earlier. Thus, the Court does not find that remand is necessary so that the ALJ can consider Plaintiff's death certificate as new evidence.

Plaintiff also vaguely suggests in a footnote that "we believe" that substantial medical evidence could be uncovered upon remand that would reveal more information about Plaintiff's death, that "underdeveloped evidence of record" may be found with an investigative request involving an expanded date range, and that proper and more valid analysis could be made with "substantial evidence development, along with possibly a medical expert and clarification of vocational testimony." (Doc. No. 11, at 4 n.2). Plaintiff has not, however, provided any basis to support such general claims that the ALJ should have supplemented the record or that remand should be granted on the basis of new evidence. Moreover, upon review of the entire record, it does not appear that any evidence was missing at the time the ALJ was considering Plaintiff's claim, nor does Plaintiff present any facts to support her assertion that relevant missing evidence exists.

Next, the Court finds no merit in Plaintiff's general contention that "the ALJ disregarded the Plaintiff['s] treating sources in her decision." (Doc. No. 11, at 5). It is

well-established that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and [residual functional capacity ("RFC")] determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). "The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011). A treating physician's opinion is only entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (quoting 20 C.F.R. § 404.1527(c)(2)). "If, however, the treating physician's opinion conflicts with other medical evidence, then the ALJ is free to give that opinion less than controlling weight or even reject it, so long as the ALJ clearly explains [his or] her reasons and makes a clear record." Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 148 (3d Cir. 2007). A treating physician's opinion on the ultimate issue of disability is not entitled to any "special significance," and an ALJ is not required to accept it since the determination of whether an individual is disabled "is an ultimate issue reserved to the Commissioner." Smith v. Comm'r of Soc. Sec., 178 Fed. Appx. 106, 112 (3d Cir. 2006).

Here, Plaintiff gives no indication as to which treating sources are alleged to have been improperly disregarded or which physician opinions are alleged to have been improperly considered by the ALJ. Plaintiff notes only that the ALJ generally gave more weight to the opinions of examining sources than to the opinions of non-examining sources and that this "was not properly done by the ALJ." (Doc. No. 11, at 5). Regardless, the Court finds that the ALJ sufficiently explained her reasons for giving the various opinions in the record the weight that she did. The Court surmises that Plaintiff may be objecting to the ALJ giving "little weight" in her analysis to the GAF scores assigned to Plaintiff by her treating psychiatrist in 2013. (R. 38-39). The Court finds, however, that the ALJ did not fail to provide sufficient reasons for discounting that opinion, nor did she simply substitute her own lay analysis for the psychiatrist's judgment in formulating Plaintiff's RFC. Rather, the ALJ fulfilled her duty as fact-finder to evaluate the psychiatrist's opinion, considering a number of factors, and in light of all the evidence presented in the record. See 20 C.F.R. §§ 404.1527, 416.927.

In fact, the ALJ explained the weight that she was giving to the psychiatrist's opinion only after engaging in an extensive discussion of the evidence of record, including Plaintiff's treatment records and other objective medical evidence, her reported symptoms, and discussion of her activities of daily living. (R. 33-39). Specifically, her psychiatrist opined a global assessment of functioning ("GAF") score of 45 when her treatment started in April 2013 and 50 when her treatment ended in October 2013. (R. 38). The ALJ also noted scores ranging from 46 to 54 from May through October of 2013 by associates who are not considered to be acceptable medical sources. After careful consideration however, the ALJ decided to afford the opinion regarding Plaintiff's scores little weight. (R. 39). The ALJ explained that GAF scores represent a claimant's condition as of the date of the appointment rather than the claimant's overall ability, and

4

are affected by a number of factors. (R. 38-39). The ALJ also noted that the latest version of the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-V) no longer utilizes GAF scores. (R. 39). Moreover, the ALJ explained that Plaintiff's low GAF scores are inconsistent with Plaintiff relative lack of mental health treatment, noting that Plaintiff had never had psychiatric emergent, partial or inpatient hospitalizations, and had only utilized intermittent and conservative outpatient services. (R. 39). Furthermore, the ALJ concluded that while she agreed that Plaintiff had serious mental health impairments as suggested by her GAF scores, those impairments were not entirely work-preclusive, and she consequently gave those scores little weight. (R. 39).

As for the other opinion evidence in the record, the ALJ reasonably gave some weight to state consultant Paul Fox, M.D., who indicated that the evidence available did not suggest a condition that would decrease diffusing capacity of the lungs for carbon monoxide. (R. 38). The ALJ explained that Dr. Fox's opinion was generally consistent with the evidence of record including relative normal examination findings and only moderate spirometry results. (R. 38).

Additionally, the ALJ appropriately handled the opinion of state consultant Douglas Schiller, Ph.D. Dr. Schiller stated that there was insufficient evidence to evaluate Plaintiff's "paragraph B" abilities and her work-related psychological functioning because she had refused to cooperate with a consultative examination. (R. 39). Nevertheless, the ALJ gave Dr. Schiller's opinion little weight because she found that evidence submitted at the hearing level allowed for an evaluation of Plaintiff's psychological functioning abilities. (R. 39).

Thus, the Court finds that the ALJ appropriately considered the medical opinion evidence in the record. Moreover, the Court notes that Plaintiff points to no evidence showing that Plaintiff had functional limitations during the relevant period that the ALJ overlooked in her analysis. Therefore, the Court finds that the ALJ did not err in giving the weight that she did to both examining and non-examining medical sources.

Third, Plaintiff alleges that the ALJ failed to use a medical advisor to establish the "onset date of the Plaintiff's slowly progressing impairments." (Doc. No. 11, at 5). A claimant's onset date of disability is "the first day an individual is disabled as defined in the Act and the regulations," and factors evaluated together to arrive at the onset date may include "the individual's allegation, the work history, and the medical evidence." SSR 83-20, 1983 WL 31249, at *1 (1983). The Social Security Administration has noted that, in the case of slowly progressive impairments, it may be "necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." Id. at *2. Furthermore, in some cases it may be possible to infer, based on the medical evidence, "that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination," and the ALJ should at the hearing "call on the services of a *medical advisor* when onset must be inferred." Id. at *3 (emphasis added).

5

In the present case, however, Plaintiff has pointed to no evidence showing that Plaintiff had a slowly progressive impairment, nor has she shown that an onset date was ever at issue in this case such that it needed to be inferred with the assistance of a medical advisor. Rather, upon a review of the record, the Court finds that the ALJ properly evaluated all the relevant evidence and did not err in concluding that Plaintiff's impairments, while severe, were not disabling.

Lastly, Plaintiff contends that the ALJ erred in failing to consider whether Plaintiff satisfied "the Grids" at the light exertional level as of her 55th birthday. The Commissioner has promulgated the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids"), to assist in determining whether a claimant is disabled. The Grids reflect the analysis of various considerations, including the claimant's physical abilities, age, education, and work experience, and direct a finding of "disabled" or "not disabled" based on the combination of these factors. However, where a claimant has both non-exertional and exertional limitations, an ALJ cannot rely solely on the Grids to make his or her disability finding. See Sykes v. Apfel, 228 F.3d 259, 266 (3d Cir. 2000). Additionally, where an "individual's exertional limitations are somewhere 'in the middle' in terms of regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability." SSR 83-12, 1983 WL 31253, at *3 (1983). In such instances, the Commissioner advises that a vocational expert ("VE") be consulted. See id.

In this case, the ALJ clearly explained in her decision how the Grids are used in the evaluation process, stating that "[i]f the claimant can perform all or substantially all of the exertional demands at a given level of exertion, [the Grids] direct a conclusion of either 'disabled' or 'not disabled' depending upon the claimant's specific vocational profile." (R. 40 (citing SSR 83-11, 1983 WL 31252 (1983))). The ALJ further noted that "[w]hen the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, [the Grids] are used as a framework for decisionmaking unless there is a rule that directs a conclusion of 'disabled' without considering the additional exertional and/or nonexertional limitations." (R. 40 (citing SSR 83-12, 1983 WL 31253; SSR 83-14, 1983 WL 31254 (1983))).

In this regard, the ALJ found Plaintiff to be an individual closely approaching advanced age on the alleged disability date and that she subsequently changed age category to advanced age (pursuant to 20 C.F.R. §§ 404.1563, 416.963). The ALJ further noted that "[i]f the claimant had the residual functional capacity to perform the full range of medium work, a finding of 'not disabled' would be directed by [the Grids]." (R. 40). The ALJ also found, however, that Plaintiff's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." (R. 40). Therefore, because the ALJ found that Plaintiff had additional exertional and non-exertional limitations, she did not rely solely on the Grids in her decision. Instead, the ALJ questioned a VE in order to "determine the extent to which these limitations erode the unskilled medium occupational base," and she relied upon that testimony in making her ultimate determination. (R. 40-41). Specifically, at the administrative

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 10) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 12) is GRANTED.

---

hearing, the ALJ instructed the VE to consider Plaintiff's age, education, work experience and RFC. (R. 76-77). The VE then testified that, given all of these specific factors, Plaintiff could perform jobs that exist in significant numbers in the national economy, such as produce packer, hand packer, and store laborer. (R. 41, 77). The ALJ consequently found that Plaintiff was not disabled. (R. 41).

In support of her argument involving use of the Grids, Plaintiff does not explain how the ALJ erred in finding Plaintiff to be capable of performing work at the medium exertional level. Instead, she states that she "believes" that the limitations imposed by the ALJ were more like work that a described hypothetical individual would perform at the light level rather than the medium level. The Court notes that, had the ALJ found Plaintiff to have been specifically limited to light work, using the Grids alone, Plaintiff likely would have been deemed disabled as of her 55th birthday. In this case, however, the ALJ did not find Plaintiff to be limited to light work, nor did she rely on the Grids alone in reaching her decision. Because the ALJ found Plaintiff to have had additional limitations, she properly consulted a VE in order to determine whether, considering Plaintiff's RFC—which found her to be capable of performing medium work with specific additional limitations—she could perform jobs that exist in significant numbers in the national economy. In response, the VE found that Plaintiff could perform such jobs. Therefore, the Court finds that substantial evidence supports the ALJ's ultimate determination that Plaintiff retains the ability to perform work consistent with her RFC finding.

As to any additional arguments mentioned summarily by Plaintiff in her brief, the Court finds that she has failed to establish how the ALJ's failure to consider properly any additional evidence of record constitutes reversible error.

In sum, after careful review of the record, the Court finds that remand is not required so that the ALJ can consider new evidence. Further, the Court finds that substantial evidence supports the ALJ's evaluation of the medical opinions in the record and her decision as to the weight given to those opinions in making her ultimate determination regarding Plaintiff's RFC. The Court also finds that the ALJ did not err in not seeking assistance from a medical advisor to infer an onset date, nor did the ALJ err by failing to consider whether Plaintiff satisfied the Grids at the light exertional level. Accordingly, the Court affirms.

                                                   <u>s/ Alan N. Bloch</u>
                                                   United States District Judge

ecf:        Counsel of record